IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WALTER C. LACEY, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.:  2:14-cv-637-WHA |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | (WO) |
| CONSERVATION AND | ) | |
| NATURAL RESOURCES, | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

This cause is before the court on a Motion for Summary Judgment (Doc. # 10), Supporting Brief (Doc. # 11), and Evidentiary Submission (Doc. # 12) filed by the Defendant, the Alabama Department of Conservation and National Resources ("DCNR"), on April 1, 2015. Also before the court are the Response (Doc. # 14) to the Motion filed by the Plaintiff, Walter C. Lacey ("Lacey") and DCNR's Reply thereto (Doc. # 15).

Lacey's Complaint, filed on June 27, 2014, alleges a single claim of race discrimination in violation of § 703(a) of Title VII, 42 U.S.C. § 2000(e)-2(a).  Specifically, Lacey alleges that DCNR failed to promote him to sergeant even though he was qualified, and instead promoted a white male who was not qualified.  (Doc. # 1 at 2 ¶ 8, 4 ¶ 23.)

Upon consideration of the briefs and evidence in support of and in opposition to the Motion for Summary Judgment, and for the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

## II. Summary Judgment Standard

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56 (c)(1)(A)–(B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### III. Facts and Procedural Background

The submissions of the parties establish the following facts, construed in the light most

favorable to the nonmovant, Lacey:

Lacey, who is black, began his employment with the Marine Police Division of DCNR as

a conservation enforcement officer on June 9, 2006.  In 2008, he heard that the Division would

have some open sergeant positions available and would be looking to fill those positions.  He

logged into the Alabama State Personnel Department's website and applied for the open sergeant

promotional register.  He also took a written test as an assessment tool to get on the employment

register.  He was ranked sixth on that register.  Lacey did not hear anything further about the

hiring process until 2010, when he was contacted to set up an interview.

There were three sergeant positions available, and Lacey and other candidates were

interviewed by a six-member promotional panel consisting of the Captain of each the four

districts in the Division along with Major Bob Huffaker and Director John Thomas Jenkins.  The

panel's purpose was to make recommendations to Jenkins based on the interviews.  He, in turn,

made recommendations to the Commissioner, and the Commissioner made the appointments.

During Lacey's interview, Major Huffaker appeared to fall asleep or doze off.

Three officers were promoted in order to fill the three vacant sergeant positions.  The

promoted officers consisted of one white female and two white males.  In this lawsuit, Lacey

contests only the promotion of one of the white males, Joseph "Jody" Kelley, who was promoted

to the sergeant position in District 4.  Specifically, Lacey views the process by which Kelley was

promoted as faulty because Kelley previously held the position of sergeant, was demoted, and was then placed on a reemployment register, which is different from the promotional register where Lacey and the other candidates were placed.

After he was notified that he would not be receiving any of the sergeant positions,[1] Lacey filed a charge with the Equal Employment Opportunity Commission ("EEOC") in October 2012. He received his right to sue letter and subsequently filed the instant suit, alleging that that the DCNR discriminated against him on the basis of his race by not promoting him, even though he was qualified, and by "hiring a white male that was not qualified, and that had not followed the proper procedure to be qualified for the position/promotion." (Doc. # 1 at 4 ¶ 23.)

## IV. Discussion

### a.  Race Discrimination Disparate Treatment Standard

Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of race under Title VII by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802.  After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  This burden of production is "exceedingly light" and is discharged so long as the defendant articulates some "clear and reasonably specific" nondiscriminatory basis for its decisions.  *Vessels v. Atlanta Ind. Sch. System*, 408 F.3d 763, 769–70 (11th Cir. 2005). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the

---

[1] The record shows Lacey was subsequently promoted to sergeant in 2013, but that fact does not affect the court's analysis for the purposes of the instant Motion.

employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256; *see also Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).

### b.  Prima Facie Case

The Eleventh Circuit uses a four-element test to determine whether a plaintiff has established a prima facie case in a failure to promote race discrimination case under Title VII. As summarized in the *Vessels* decision:

> [T]he plaintiff must prove the following four elements: 1) that she belongs to a protected class; (2) that she was qualified for and applied for a job for which the employer was seeking applicants; 3) that, despite her qualifications, she was rejected; and 4) that, after her rejection, the employer continued to seek applicants or filled the position with a person outside of the plaintiff's protected group.[2]

408 F.3d at 768.  The court will assume without deciding that the record indicates Lacey could make a prima facie case of race discrimination through failure to promote.  Even under that assumption, summary judgment is due to be granted because Lacey has not presented any evidence tending to show that DCNR's proffered reasons for repromoting Kelley were pretext for race discrimination.

### c.  Whether DCNR's Proffered Reasons Were Pretextual

The Complaint alleges that Kelley was not qualified for the sergeant position because he "was not within the top 10 on the state registry list. In fact, [Kelley] had not even taken the state-required test, and was therefore not on the state registry list for those particular

---

[2] As DCNR points out, there is an intracircuit conflict in the Eleventh Circuit as to the last element of this test.  *See Holmes v. Ala. Bd. of Pardons & Paroles*, 591 F. App'x 737, 742 (11th Cir. 2014) (describing the conflict).  The court will not take up or attempt to resolve the conflict here because summary judgment is due to be granted regardless of whether Lacey can establish a prima facie case of discrimination through failure to promote.

positions/promotions at all." (Doc. # 1 at 3–4 ¶ 21.) DCNR has presented evidence to the court

on both the process by which Kelley was repromoted and his substantive qualifications.

As to the legitimacy of the process, DCNR relies primarily on the affidavit of Christy

Kelley,[3] Recruitment and Examinations Manager for the Alabama State Personnel Department

(Doc. # 12-5). The affidavit describes the different register types available for filling vacancies

in Alabama state agencies. These registers include "an open-competitive employment register, a

promotional register, and a reemployment register." (Doc. # 12-5 at 2 ¶ 6.) To hire or promote

an employee, agencies request a Certificate of Eligibles ("COE") from the State Personnel

Department and choose a candidate to appoint from the COE. The COE for open-competitive

and promotional registers contains the top ten ranked candidates based on a variety of

assessments, potentially including questionnaires and a written test. For the reemployment

register, the COE "consists of those persons eligible for reemployment for that particular

classification." (*Id.* at 2 ¶ 8.) According to Ms. Kelley, "an employee, like Jody Kelley, who

was demoted from his classification, can be placed on the reemployment register by State

Personnel at the request of an agency." (*Id.* at 2 ¶ 7.) Upon review of the files relating to the

three sergeant appointments in 2010, Ms. Kelley concluded that all of the proper procedures

were followed in the placement of Jody Kelley on the reemployment register and his subsequent

appointment to the sergeant position. (*Id.* at 3 ¶ 10.)

In addition to presenting the evidence described above to establish the legitimacy of the

hiring process, DCNR has also submitted evidence to show the reasons that Kelley was

recommended for the appointment to sergeant in District 4. For example, DCNR submitted the

affidavit of John Thomas Jenkins (Doc. # 12-3), who was the Director of the Marine Police

---

[3] To her knowledge, Christy Kelley is not related to Jody Kelley. (Doc. # 12-5 at 1 ¶ 2.) The court will refer to
Lacey's comparator Jody Kelley as "Kelley," and to the Recruitment and Examinations Manager as "Ms. Kelley."

Division when the hiring decisions at issue in this case were made.  It was Jenkins's responsibility to make a recommendation to the Commissioner, and the Commissioner could agree or disagree with that recommendation and make the appointment if he agreed.  (Doc. # 12-3 at 4 ¶ 13.)  In his affidavit, Jenkins explained that after the interviews were completed, two captains and Major Huffaker recommended Kelley and two captains recommended another candidate, Jeremy Alford.  (*Id.* at 5 ¶ 17.)  Jenkins took those recommendations and his own impressions into account and ultimately recommended Kelley to the Commissioner because of the time he had spent with the Marine Police Division and specifically in District 4, and because of his "work and outstanding leadership ability during the Division's response to the BP Oil Spill crisis earlier in 2010." (*Id.* at 5 ¶ 18.)  Jenkins heard high praise of Kelley's performance from a variety of sources, including unsolicited feedback from citizens and response workers.  (*Id.*)  For those reasons, Jenkins recommended that the Commissioner appoint Kelley as sergeant in District 4.  The Commissioner at the time, M. Barnett Lawley, stated that he made the decision to appoint Kelley based on Jenkins's recommendation and based on Lawley's "own knowledge of [Kelley's] qualifications, experience and good work performance, especially his exemplary performance during the BP oil spill." (Doc. # 12-4 at 2 ¶ 6.)

In the face of DCNR's proffered legitimate, nondiscriminatory reasons for promoting Kelley, Lacey does not dispute that Kelley had extensive experience in the Marine Police Division or that he performed well during the oil spill crisis.[4]  To rebut DCNR's justifications for promoting Kelley and not him, Lacey asserts in his brief only that the process by which Kelley was hired was faulty because he was not on the employment register.  Lacey further contends in his brief that Major Huffaker's dozing off during his interview showed disinterest in Lacey as a

---

[4] Regarding the oil spill in particular, Lacey testified at his deposition that he "heard nothing but good things about, you know, [Kelley's] performance and how good of a job that he did." (Doc. # 12-1 at 30:6–8.)

candidate, and therefore is evidence of discrimination.  These arguments do not "persuad[e] the court that a discriminatory reason more likely motivated the employer or [show] that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.  This is so in part because Lacey has not submitted any evidence to contest the showing made by DCNR in its brief in support of the Motion for Summary Judgment.

In response to DCNR's argument and supporting evidence concerning the hiring process, Lacey relies only on assertions in his Complaint and his Response.  In the Response, he contends: "Alabama State Personnel has a rule that if an employee is demoted as sanctions for inappropriate behavior, that employee may not be placed on the rehire/re-employment register, and must follow the proper procedures as applying for the position, and being placed on the promotional register just as anyone else."  (Doc. # 14 at 2–3.)  The Response does not cite any source for this purported rule or any attached exhibits.  In fact, the Response has no evidentiary submissions attached at all.

Lacey's bare assertion that the above rule exists and would apply to the hiring decision at issue is insufficient to create a genuine issue of material fact in light of the affidavit of Ms. Kelley upon which DCNR relies.  DCNR has met its burden under Rule 56 by submitting evidence upon which it bases its Motion for Summary Judgment.  Because of this, "Rule 56(e) therefore requires [Lacey] to go beyond the pleadings and by [his] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp.*, 477 U.S. at 324.  Lacey's unsupported assertions do not suffice for this purpose.  *See Alexander v. TFM Boral Brick, Inc.*, No. 3:07-cv-647-WHA-TFM, 2008 WL 4951240, at *3 (M.D. Ala. Nov. 19, 2008) ("The party opposing summary judgment must respond by setting forth specific evidence in the record and

articulating the precise manner in which that evidence supports his or her claim, and [may] not rest upon the mere allegations or denials of the pleadings."). Because he has cited no source or other evidence to controvert DCNR's evidence, the court cannot conclude that there is a genuine issue of material fact as to the legitimacy of the process through which Kelley was promoted. The court also finds no genuine issue of material fact as to the other justifications for Kelley's promotion because Lacey has not contested them in any fashion.

In addition to arguing that the proper procedures were not followed in Kelley's appointment, Lacey argues that the fact that the Marine Police Division had never had a black or African-American supervisor as of 2010, along with the fact that Major Huffaker fell asleep during his interview, "demonstrate a bias on the part of the DCNR." (Doc. # 14 at 3.) Even making the inference most favorable to Lacey, that Major Huffaker's conduct indicated disinterest in the interview for some reason, without any other evidence of discriminatory intent the court cannot draw the additional inference that such disinterest was related to Lacey's race. Even Lacey himself, in his deposition, was not sure if he felt discriminated against on the basis of his race due to Major Huffaker's behavior. When asked if it made him feel "discriminated against on the basis of [his] race," Lacey answered: "Either the basis of my race or just because I was me. I don't know." (Doc. # 12-1 at 23:11–15.)

Furthermore, while racial hiring statistics may sometimes be relevant evidence in race discrimination cases, the fact that there had been no black supervisors in the Division as of 2010 cannot carry Lacey's case on its own. The Supreme Court stated in *McDonnell Douglas* that "statistics as to [an employer's] employment policy and practice may be helpful to a determination of whether petitioner's refusal to rehire [the plaintiff] in [a] case conformed to a general pattern of discrimination against blacks," but also "caution[ed] that such general

9

determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to hire." 411 U.S. at 1826 & n.19.  Here, as set out above, DCNR has presented justifiable reasons for its hiring decisions.  Due to the absence of other evidence as to intent or bias, the court cannot rely on Lacey's statistical claim alone to conclude that there is a genuine issue of material fact as to discriminatory animus.

In summary, the court has reviewed the evidentiary material submitted by DCNR and finds no question of fact as to any material issue raised by DCNR as a ground for summary judgment.  DCNR has met its burdens both under Rule 56 and the *McDonnell Douglas* burden-shifting framework.  It has presented legitimate, nondiscriminatory reasons for the hiring decisions it made, supported with specific evidence in the record.  Lacey has not met his burden of showing, through citation to evidence beyond the pleadings, that there is a genuine issue of material fact as to whether discrimination more likely caused the hiring decisions or whether DCNR's proffered reasons are unworthy of credence.  Therefore, summary judgment is due to be GRANTED on Lacey's race discrimination claim.

### V. Conclusion

For the reasons discussed, it is hereby ORDERED that the Motion for Summary Judgment (Doc. # 10) is GRANTED.

A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 1st day of May, 2015.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

10